Argued and submitted September 9, decision of the Court of Appeals affirmed in part and reversed in part; order of the circuit court affirmed in part and reversed in part, and case remanded to the circuit court December 29, 1994

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# RONALD LEROY DANIELS,
*Petitioner on Review.*

(CC 10-92-02735; CA A78017; SC S40957*)

886 P2d 1019

---

\* (Previously consolidated with *State v. Hammerton,* CC 10-92-06751, CA A78020; and *State v. Walmsley,* CC 10-92-09029, CA A78025.)

David E. Groom, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Sally L. Avera, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on a response to the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

CARSON, C. J.

## CARSON, C. J.

In this case, defendant was charged by indictment with felony driving while revoked on March 27, 1992. Before trial, defendant moved to exclude[1] from evidence three orders by which defendant's driving privileges earlier had been revoked. The orders related to three separate revocations: September 25, 1979, for felony driving while suspended; October 20, 1981, again for felony driving while suspended; and December 26, 1981, following a determination that defendant was a habitual traffic offender.

In support of his motion, defendant argued that, because the "revocation period" contained in the statutes and the orders had elapsed before the time of the charged offense, under those orders, he could not have been driving while revoked. Consequently, defendant argued that the revocation orders were not relevant to whether he was driving while revoked on the date of the charged offense. The trial court granted the motion to exclude the revocation orders. The state appealed.

In a consolidated appeal of this case and the cases of *State v. Walmsley* and *State v. Hammerton*, the Court of Appeals reversed the trial court, holding that the revocation of driving privileges is indefinite and that "[t]he revocation period is simply the statutory period of time during which a person whose license has been revoked may not attempt to reestablish driving privileges." *State v. Daniels*, 124 Or App 420, 425, 862 P2d 524 (1993). The Court of Appeals held that because none of defendants had their driving privileges reinstated at the time of the charged offense, the revocation orders were relevant to show that defendants were driving while revoked. *Id.*

We allowed review and, by separate order, severed the cases of *State v. Hammerton* and *State v. Walmsley* from this case. *State v. Hammerton/Walmsley*, 320 Or 454, 886 P2d 1012 (1994), also decided today, is reported separately.

---

[1] The motion was entitled "Motion to Prohibit Introduction." For the purposes of pretrial appeal, the parties and the Court of Appeals apparently have treated the motion as a motion to suppress. We shall do the same. *See* ORS 138.060(3) (granting the state an appeal from "[a]n order made prior to trial suppressing evidence"); *see also State v. Hammerton/Walmsley*, 320 Or 454, 456 n 1, 886 P2d 1012 (1994) (treating identical motions as motions to suppress).

In this court, defendant argues that the trial court correctly excluded the three revocation orders listed above because they are irrelevant to the March 1992 charge of felony driving while revoked, the current charge. *See* OEC 401 (relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). The offense of felony driving while revoked is contained in ORS 811.182[2]:

"(1) A person commits the offense of criminal driving while suspended or revoked * * * if the person violates ORS 811.175 and the suspension or revocation is one described in this section * * *.

"* * * * *

"(3) The crime is a Class C felony if the suspension or revocation resulted from any of the following:

"(a) Habitual offender status under ORS 809.640.

"* * * * *

"(c) Any crime punishable as a felony with proof of a material element involving the operation of a motor vehicle."

ORS 811.175, incorporated into felony driving while revoked, provides, in part:

"(1) A person commits the offense of infraction driving while suspended or revoked * * * if the person:

"(a) Drives a motor vehicle upon a highway *during a period when the person's driving privileges or right to apply for driving privileges have been suspended or revoked* in this state by a court or by the Department of Transportation.

"* * * * *

"(4) The offense described in this section, infraction driving while suspended or revoked * * * is a Class A traffic infraction except as otherwise provided in ORS 811.182." (Emphasis added.)

■    We held in *State v. Hammerton/Walmsley, supra,* that ORS 811.175 and 811.182 make it an offense for a person whose driving privileges have been revoked to drive during a

---

[2] Defendant was charged with driving while revoked in 1992. In 1993, the legislature amended ORS 811.182 in a way not relevant to this case. Or Laws, ch 305, § 2. Accordingly, we cite to the current version of the statute.

statutorily specified *revocation period*. 320 Or at 462. We held that, if a person drives after the revocation period has lapsed but before the person's driving privileges have been reinstated, the person does not commit the offense of driving while revoked; at most, he or she commits the Class B traffic infraction of driving without driving privileges. *Id.*; *see also* ORS 807.010(1) ("A person commits the offense of vehicle operating without driving privileges if the person operates a motor vehicle * * * and the person does not have an appropriate grant of driving privileges from this state.").

In *Hammerton/Walmsley*, this court explained:

"Read together, the text and context of ORS 811.175 make clear that the statutory scheme contemplates a finite revocation period. During the specified revocation period, the revoked person may neither drive nor apply for driving privileges. After the revocation period is over, the person still does not have driving privileges, but he or she may apply anew for driving privileges." 320 Or at 462.

Accordingly, if the statutorily specified revocation period has elapsed before the date of the charged offense, the revocation order is irrelevant to whether the person was driving while revoked on that date.

■ Thus, we must determine whether defendant was charged with driving during the "revocation periods" contemplated by the orders in this case. Because defendant's driving privileges were revoked under two different statutes, we consider the revocations under each statute in turn.

### 1. *1979 and 1981 Felony Driving While Suspended*

In September 1979 and October 1981, defendant's driving privileges were revoked for felony driving while suspended under *former* ORS 482.430(1) (1977), which provided, in part:

"The [Motor Vehicles Division] forthwith shall revoke any person's permit or license to operate motor vehicles upon receiving a record of the conviction of such person of any of the following offenses:

"* * * * *

"(c) Any crime punishable as a felony in the commission of which a motor vehicle is used."

Defendant would have us hold that the 1979 revocation and the 1981 revocation each were a revocation for a period of one year because *former* ORS 482.500(1) (1977) provided, in part:

"[A]ny person whose permit, license or right to apply for a license is revoked under this chapter is *not entitled to apply for or receive any new license until the expiration of one year* from the date:

"(a) Of the conviction upon which the revocation was based, if no appeal was taken.

"(b) When his conviction was sustained by the appellate court, if an appeal was taken." (Emphasis added.)

It is unclear from the text of *former* ORS 482.430 and 482.500 (1977) whether the legislature contemplated an indefinite revocation that ended only when the person whose license was revoked reapplied for and was issued a new license (indefinite revocation) or whether the legislature contemplated a one-year revocation period (finite revocation). There is nothing in the context of the statute that clarifies legislative intent. Nonetheless, as explained below, for the purposes of this case, we treat the revocations as if they were finite revocations for a period of one year each.

Defendant's license was revoked in 1979 and 1981 in accordance with the statutes then in existence. In 1983, the legislature amended the Oregon Vehicle Code by adding a section that provided that a person is not eligible to apply for a driver license "while the person's driving privileges *are revoked* in this state." ORS 807.060(13). (Emphasis added.) As we stated in *State v. Hammerton/Walmsley, supra*, if revocation were to extend indefinitely until a person whose driving privileges are revoked reapplies for and is granted driving privileges, that person never would be eligible to obtain driving privileges under ORS 807.060(13). 320 Or at 461.

Defendant in this case was charged with driving while revoked under the current version of ORS 811.182. If we were to hold that defendant's license was indefinitely revoked under *former* ORS 482.430 and 482.500 (1977), defendant's license would have been *permanently* revoked without the possibility of reinstatement because defendant

did not reapply for driving privileges before the 1983 amendment. That reading of the statute cannot be what the legislature intended. *See State v. Hammerton/Walmsley, supra,* 320 Or at 462 (holding that legislature did not intend indefinite revocation under current law).[3] Consequently, for the purposes of this case, we shall treat defendant as if his license were revoked each time for a period of one year only.

■ In this case, the one-year periods contained in the 1979 and 1981 revocations had expired before the charged offense occurred. The 1979 and 1981 revocation orders were not relevant to the charge of driving while revoked in 1992. Accordingly, the trial court was correct in excluding the orders. The Court of Appeals erred in reversing the decision of that court.

### 2. *1981 Habitual Traffic Offender*

■■ The third order that defendant challenges revoked defendant's license in December 1981 after a court determined that defendant was a habitual offender. Defendant's license was revoked under *former* ORS 484.730 (1981), which provided, in part:

> "[I]f the court finds that the person before the court * * * is a habitual offender, * * * the court shall so find and by appropriate order direct the person not to operate a motor vehicle on the highways of this state and to surrender to the court all licenses or permits to operate a motor vehicle on the highways of this state * * *. The clerk of the court shall file with the division a copy of the order whereupon the division shall forthwith revoke the license of the person to operate motor vehicles."

Defendant would have us hold that the former Habitual Traffic Offenders Act contained a 10-year revocation period and that that period had elapsed before the charged offense occurred. We disagree. The reinstatement of privileges to habitual offenders was governed by *former* ORS 484.735(1) (1981), which provided:

---

[3] The state relies upon the Court of Appeals' opinion in *State v. Foster,* 54 Or App 405, 635 P2d 11 (1981), which held that, under *former* ORS 484.430(1) (1977), revocation was indefinite. We do not decide here whether *Foster* was correctly decided under the driving while suspended (and revoked) statute then in force, *former* ORS 487.560 (1979). The subsequent addition of ORS 807.060(13) to the Oregon Vehicle Code renders the analysis in *Foster* inapplicable here.

"Except as provided in subsection (2) of this section, a license to operate motor vehicles in this state shall not be issued to a habitual offender:

"(a)   For a period of 10 years after the date of the order of the court finding a person to be a habitual offender; and

"(b)   Until the privilege of the person to operate a motor vehicle in this state has been restored by order of a court of record entered in a proceeding as provided by ORS 484.745."

Further, *former* ORS 484.745 (1981) provided, in part:

"At the expiration of 10 years after the date of any final order finding a person to be a habitual offender the person may petition any court of record in the county in which he then resides, for restoration of his privilege to operate a motor vehicle in this state. Upon such petition, and *for good cause shown, the court may, in its discretion, restore to the person the privilege to operate a motor vehicle in this state upon such terms and conditions as the court may prescribe.*" (Emphasis added.)

Thus, after 10 years, the habitual offender could not have his or her driving privileges reinstated simply by reapplying through the ordinary process. After the passage of the statutory time, the habitual offender still was not automatically in the same position as the person who has *never had* driving privileges. Rather, under the former Habitual Traffic Offenders Act, after 10 years, the person seeking restoration of driving privileges had to show good cause for such restoration, and the restoration could be conditional. Moreover, it was within the discretion of the court to restore driving privileges to the habitual offender. Only after a court had restored such privileges could the habitual offender seek a license to operate a motor vehicle from the Motor Vehicles Division. In other words, the driving privileges of the habitual offender remained *revoked* until a judge exercised his or her discretion, decided that it was appropriate to reinstate the person's driving privileges, and issued a court order to that effect. It was that court order that ended the "revocation period."

Thus, under the former Habitual Traffic Offenders Act, the "revocation period" lasted until the revoked person obtained a court order reinstating his or her driving privileges. In this case, there is no evidence that defendant

obtained any such order. Defendant does not argue that his driving privileges had been reinstated by the time of the charged offense. He argues merely that the 10-year period contained in *former* ORS 484.735 (1981) had lapsed and that his license no longer was *revoked*. Because defendant had not sought and obtained a court order reinstating his driving privileges, the state correctly argues that the charged offense occurred during the "revocation period" for the 1981 habitual offender revocation.[4]

As a result, the revocation order issued pursuant to the Habitual Traffic Offenders Act was relevant in this felony driving while revoked case. The trial court erred in excluding the order as irrelevant.

---

[4] Even if defendant had sought reinstatement of his driving privileges under the current habitual offender statute, defendant would not be eligible automatically for driving privileges after the expiration of five years. ORS 809.650 provides, in part:

"When the Department of Transportation revokes a person's driving privileges as a habitual offender * * * the person has no driving privileges * * * and cannot obtain any driving privileges for motor vehicles in this state * * * until the person:

"(a) Is again eligible under this section for the issuance of driving privileges; and

"(b) The department restores the privilege of the person to operate a motor vehicle in this state under ORS 809.660.

"(2) A person whose driving privileges are revoked as a habitual offender is not eligible for the issuance of driving privileges *until the expiration of five years from the date the driving privileges of the person were revoked*." (Emphasis added.)

ORS 809.660 further provides:

"When a person whose driving privileges have been revoked as a habitual offender becomes eligible for issuance of driving privileges under ORS 809.650, the person may apply to the Department of Transportation for restoration of the privilege to operate a motor vehicle in this state. Upon such petition, and for good cause shown, the department, in its discretion, may restore to the person the privilege to operate a motor vehicle in this state:

"(1) Upon such terms and conditions as the department may prescribe; and

"(2) Subject to other provisions of law relating to the issuance of driving privileges."

Thus, even if defendant were to seek reinstatement under the new statute, it would be within the discretion of the Department of Transportation to restore his privileges. Moreover, defendant would be required to show good cause for such restoration. Even under the new statute, defendant would remain revoked until the Department of Transportation saw fit to restore his privileges. At the time of the charged offense, defendant had not sought reinstatement of his driving privileges under either the new or the old law. Thus, defendant's driving privileges still were revoked under the 1981 habitual offender revocation order at the time of the charged offense.

The decision of the Court of Appeals is affirmed in part and reversed in part. The order of the circuit court is affirmed in part and reversed in part. The case is remanded to the circuit court for proceedings consistent with this opinion.