Argued and submitted August 27, 1999, affirmed March 8, 2000

## STATE OF OREGON,
*Respondent,*

*v.*

## JAMES EDWARD STANFILL,
*Appellant.*

(97CR1249FE; CA A99898)

997 P2d 297

Susan F. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

■ Defendant appeals a conviction for felony driving while revoked. ORS 811.175(1)(a); ORS 811.182(3)(a)(1997).[1] He assigns error to the trial court's denial of a motion to exclude evidence of the underlying driver's license revocation. The issue is whether, under ORS 809.650 and ORS 809.660, a habitual offender revocation continues indefinitely until the Department of Transportation (Department) affirmatively restores driving privileges. We conclude that it does and that the trial court therefore correctly admitted the challenged evidence. Consequently, we affirm.

In 1990, the Department revoked defendant's driving privileges because it found that he was a habitual traffic offender. In 1997, defendant was charged with felony driving while revoked. Before trial, defendant moved to exclude evidence of the 1990 revocation as irrelevant to the current charge. The trial court denied that motion, the case proceeded to trial, and a jury convicted defendant.

On appeal, defendant argues that his license was no longer revoked when he committed the 1997 offense because the statutes contemplate a finite five-year revocation period, which had expired. According to defendant, after that finite period, he was merely unlicensed, not revoked, and at most could be guilty of driving without a license, an infraction. ORS 807.010 (1997). The state counters that, even though defendant was eligible to apply for restoration, the revocation continued in force because the Department had not restored his driving privileges.

ORS 809.650 provides, in part:

"(1)   When the Department of Transportation revokes a person's driving privileges as a habitual offender under ORS 809.640 the person has no driving privileges * * * and

---

[1] ORS 811.175(1)(a) provides that a person commits the offense of driving while revoked if the person "[d]rives a motor vehicle upon a highway during a period when the person's driving privileges or right to apply for driving privileges have been * * * revoked in this state * * * by the Department of Transportation." ORS 811.182(3)(a) (1997) elevates the offense to a Class C felony if the suspension or revocation resulted from "[h]abitual offender status under ORS 809.640."

cannot obtain any driving privileges for motor vehicles in this state, * * * until the person:

"(a)  Is again eligible under this section for the issuance of driving privileges; and

"(b)  The department restores the privilege of the person to operate a motor vehicle in this state under ORS 809.660.

"(2)  A person whose driving privileges are revoked as a habitual offender is not eligible for the issuance of driving privileges until the expiration of five years from the date the driving privileges of the person were revoked."

ORS 809.660 further provides:

"When a person whose driving privileges have been revoked as a habitual offender becomes eligible for issuance of driving privileges under ORS 809.650, the person may apply to the Department of Transportation for restoration of the privilege to operate a motor vehicle in this state. Upon such petition, and for good cause shown, the department, in its discretion, may restore to the person the privilege to operate a motor vehicle in this state:

"(1)  Upon such terms and conditions as the department may prescribe; and

"(2)  Subject to other provisions of law relating to the issuance of driving privileges."

The net effect of those statutes is that a habitual offender whose license has been revoked first must become eligible and then must apply for restoration of driving privileges. The Department has discretion whether to restore the driving privileges and may do so upon a determination that good cause has been shown and pursuant to such terms and conditions as the Department may prescribe.

In two cases decided on the same date, the Oregon Supreme Court addressed, under an antecedent statutory scheme, the circumstances in which a person remained "revoked" following a revocation period until restoration of driving privileges and the circumstances in which the person's status was merely that of an unlicensed driver. The essential distinction, the court concluded, was whether the period of revocation is finite or indefinite. *See State v.*

*Daniels*, 320 Or 466, 886 P2d 1019 (1994); *State v. Hammer-ton / Walmsley*, 320 Or 454, 886 P2d 1012 (1994). In *Hammerton / Walmsley,* the court concluded that a revocation order issued under ORS 809.410(4) (revocation based on felony conviction involving material element of operation of a motor vehicle) was for a finite period of one year. 320 Or at 462-63. The court determined that the period was finite because after the one-year period, the person was free to apply for driving privileges on the same terms as other persons generally. Consequently, after the period of revocation passed, and until the person reapplied for driving privileges, the person's status was that of an unlicensed driver, not a revoked driver.

In *Daniels,* the court came to the opposite conclusion. There, the court examined a revocation under *former* ORS 484.730 (1981), the antecedent to the statute involved in this case, which similarly provided for revocations for habitual traffic offenders. As to that ground for revocation, the court concluded that the revocation period was indefinite and lasted until the revoked person obtained a court order reinstating his or her driving privileges. *Daniels*, 320 Or at 472-74. The court reached that conclusion based on the different procedures for restoring driving privileges to a revoked habitual traffic offender. Specifically, the court relied on the fact that a revoked habitual traffic offender was not entitled to seek restoration of his or her driving privileges through the ordinary procedures for obtaining a license to drive. Instead, the person must apply to the court and persuade the court to exercise its discretion to restore the person's driving privileges. *Id.* at 473. The court in *Daniels* therefore concluded, based on that different procedure, that even after the "revocation period" expires, the person's status is still that of a revoked driver, not just an unlicensed one, until a court exercises its discretion to restore driving privileges. *Id.* at 473-74.

For the most part, the court in *Daniels* analyzed the issue pursuant to the provisions in effect in 1981, the year in which the defendant's license was revoked. *Id.* at 472-74 (quoting *former* ORS 484.730, ORS 484.735, and ORS 484.745 (1981)). In a footnote, however, the court also quoted and discussed the "current" habitual offender statutes, which are the same statutes that control this case. *Id.* at 474 n 4 (quoting ORS 809.650 and ORS 809.660). Although those

superseding statutes were enacted after the defendant's license in *Daniels* was revoked, the court considered them on the assumption that the defendant was in a position to seek reinstatement pursuant to them. *Id.* Significantly, the court concluded:

"[U]nder the new statute, it would be within the discretion of the Department of Transportation to restore [defendant's] privileges. Moreover, defendant would be required to show good cause for such restoration. Even under the new statute, defendant would remain revoked until the Department of Transportation saw fit to restore his privileges. At the time of the charged offense, defendant had not sought reinstatement of his driving privileges under either the new or the old law. Thus, defendant's driving privileges still were revoked under the 1981 habitual offender revocation order at the time of the charged offense."

*Id.*

■        Defendant in this case discounts that discussion as *dictum*, but it is not. The court's discussion, albeit in a footnote, was not gratuitous. It was necessary to an understanding of the entire statutory scheme bearing on the defendant's status at the time of the offense. We believe that *Daniels* is controlling in this case. In all events, we find it persuasive. No meaningful distinction can be drawn between the statutes that the court considered in the body of its opinion and those that it considered in the footnote and that are before us in this case.

Thus, we conclude that the trial court properly denied defendant's motion to exclude the evidence of his revocation because that evidence was relevant to defendant's status at the time of the offense. Defendant became eligible to apply for restoration of driving privileges five years after his license was revoked. But he had not done so, and the Department had not exercised its discretion to restore his driving privileges, as of 1997, when he committed the acts that were the basis for the charge in this case. The evidence of the 1990 revocation therefore was relevant and admissible to prove that defendant's license remained revoked at the relevant time. The trial court did not err.

Affirmed.